569 P.2d 1371

Jerome A. ZURAVSKY, Wallace W. McWhirter, M. D., and Charles W. Lennon, on behalf of Pima County, Arizona, Appellants,

v.

Ron ASTA, James Murphy, Jr., E. S. "Bud" Walker, Conrad F. Joyner, Joseph A. Castillo and Sam Lena, Appellees.

No. 2 CA–CIV 2320.

Court of Appeals of Arizona, Division 2.

Aug. 1, 1977.

Rehearing Denied Aug. 30, 1977.

Review Denied Sept. 27, 1977.

---

Ronald W. Sommer, David T. Hardy, Tucson, for appellants.

Stephen D. Neely, Pima County Atty., by Rose S. Silver, Sp. Chief Deputy County Atty., and Howard L. Baldwin, Albin R. Krietz and Ronald M. Lehman, Deputy County Attys., Tucson, for appellees.

## OPINION

RICHMOND, Judge.

This is an appeal from a summary judgment against Pima County taxpayers who sued to enjoin members of the Board of Supervisors from spending public funds for nontherapeutic abortions and to recover sums spent for such procedures, together with interest and statutory penalty.[1]

The question thus presented is whether a county board of supervisors may legally spend tax dollars for elective abortions under A.R.S. § 11–251, as amended, which provides, in pertinent part:

"§ 11–251. *Powers of board*

"The board of supervisors, under such limitations and restrictions as are prescribed by law, may:

\* \* \* \* \* \*

"5. Provide for the care and maintenance of the indigent sick of the county, erect and maintain hospitals therefor

.  .  . .

\* \* \* "

The Supreme Court of the United States has held recently in two cases that the Equal Protection Clause of the United States Constitution does not require states to pay expenses incident to nontherapeutic abortions for indigent women simply because funds are provided for expenses incident to childbirth. *Maher v. Roe,* —— U.S. ——, 97 S.Ct. 2376, 53 L.Ed.2d 484, and *Poelker v. Doe,* —— U.S. ——, 97 S.Ct. 2391, 53 L.Ed.2d 528 both filed June 20, 1977. In an accompanying opinion, the Court stated that the decision whether to provide funding for elective abortions ordinarily is one to be made through the normal democratic processes:

" \* \* \* The issues present policy decisions of the widest concern. They should be resolved by the representatives of the people, not by this Court." *Beal v. Doe,* —— U.S. —— n. 15, 97 S.Ct. 2366, 2373, 53 L.Ed.2d 464, filed June 20, 1977.

Similarly, in *Poelker,* the Court stated:

" \* \* \* Although the Mayor's personal position on abortion is irrelevant to our decision, we note that he is an elected official responsible to the people of St. Louis. His policy of denying city funds for abortions such as that desired by Doe is subject to public debate and approval or disapproval at the polls."

---

1.  "§ 11–641. *Money illegally paid; liability; recovery*

"A. When a board of supervisors, without authority of law, orders any money paid from the county treasury, the board and the party in whose favor the order is made shall be jointly and severally liable for the money with interest at the legal rate, and twenty per cent additional on the principal amount. \* \* \* "

We believe the reasoning of the Supreme Court in *Beal* and *Poelker* supports the judgment of the trial court here. We conclude that the supervisors are neither required nor forbidden to pay expenses incident to elective abortions, and affirm.

The taxpayers urge a limited definition of "sick" that would exclude pregnancy, but do not challenge use of public funds for expenses of childbirth. While the Equal Protection Clause under *Maher* and *Poelker* may not require payment for nontherapeutic abortions as a concomitant to payment for obstetrical care, we are dealing here with a question of statutory interpretation rather than one of constitutional analysis. If the supervisors interpret "sick" to authorize payment of expenses incidental to childbirth, may they not also interpret it to authorize payment of expenses incident to elective abortions, even though for policy reasons they also might choose not to do so?

" * * * '[W]e must be mindful that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . ." ' *New York Department of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), quoting *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969)." *Beal v. Doe,* supra.

We do not attempt to provide a specific definition of "sick" as used in § 11–251. The record reflects a wide variety of operative procedures performed at Pima County General Hospital. Under the doctrine espoused by the Supreme Court in *Beal v. Doe,* supra, the range of medical services provided by each county is best left to its board of supervisors, as the elected representatives of the people.

We note, however, the language from earlier abortion cases, as quoted by Mr. Justice Brennan in his dissent in *Beal v. Doe,* supra:

" * * * *Roe v. Wade,* 410 U.S. 113, 163, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), held that '[t]he attending physician, in consultation with his patient, is free to determine without regulation by the State, that in his medical judgment the patient's pregnancy should be terminated.' And *Doe v. Bolton,* 410 U.S. 179, 192, 197, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), held that 'the medical judgment may be exercised in the light of all factors—physical, emotional, psychological, familial, and the woman's age—relevant to the well-being of the patient. All these factors may relate to health. This allows the attending physician the room he needs to make his best medical judgment. And it is room that operates for the benefit not the disadvantage of the pregnant woman.' "

We note also that a narrow definition of "sick" under § 11–251 would conflict with prenatal care, immunization programs, and other preventive measures unquestionably related to public health.

We disagree with the taxpayers' assertion that their lawsuit will determine "whether § 11–251 mandates total socialization of medical services for indigent persons or whether it merely mandates care and hospitalization of the indigent sick," and "[i]f the former, then this suit has served a valuable social purpose by bringing to light the county's improper refusal to fund certain other non-therapeutic, elective surgical and dental procedures." Our conclusion merely leaves to the determination of the supervisors what services shall be provided under the statute's broad general mandate, subject to such limitations and restrictions as are prescribed by law. For a similar result in a case holding consensual sterilization permissible under a statute authorizing "relief during temporary sickness," see *Hathaway v. Worcester City Hospital,* 475 F.2d 701 (1st Cir., 1973) stay denied, 411 U.S. 929, 93 S.Ct. 1888, 36 L.Ed.2d 388 (1973).

We are mindful that different counties may reach different decisions under this holding. The record reflects a present lack of uniformity in related areas, i.e., some counties including the most populous provide a full range of obstetrical services while at least one county offers none. Such

disparity is inherent in the philosophy of *Beal v. Doe,* supra.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.